UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERICKA ELY,

    *Plaintiff,*                        Case No.: 8:26-cv-2323

    *v.*

                                **JURY TRIAL DEMANDED**

CLARITY SERVICES, INC.,

    *Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Ericka Ely ("Ms. Ely"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Ely against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Ely's claims occurred in this District, where Ms. Ely resides and received her consumer report disclosures at issue.

## PARTIES

### Ms. Ely

5. Ms. Ely is a natural person residing in New Port Richey, Pasco County, Florida.

6. Ms. Ely is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses

various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Ms. Ely's Credit File with an Unrelated Person

10.    Around July 2022, Clarity began maintaining a credit file on Ms. Ely.

11.    At some point after it began maintaining a file on Ms. Ely, Clarity started incorporating credit information belonging to a separate, unrelated consumer into her file.

12.    Clarity falsely associated information apparently belonging to an unrelated individual named "Gena Rogers" into Ms. Ely's credit file.

13.    "Gena Rogers" bears a surname entirely different from Ms. Ely's and is associated with a different Social Security number, date of birth, and address than Ms. Ely.

14.    Clarity incorporated each of the below into Ms. Ely's credit file, which information does not belong to Ms. Ely:

a.    Date of birth in November 1971;

b.    South Carolina driver's license number;

c.    Home address in Anderson, South Carolina;

d.    Housing status of "own";

e.    Months at address: 60;

f.    Cell phone number ending in 6742;

g.    Home phone number ending in 6742;

h.    Work phone number ending in 9898;

i.    Email address beginning "genarog…";

j.    Employer name: "Rogers";

k.    Occupations: "Supervisor," and "Social Security"

l.    Months at Employer: 60;

m.    Net Monthly Incomes of $2,000 & $3,000;

n.    Pay frequency: "Monthly" and "Biweekly";

o.    Date of next paycheck: 08/05/2022;

p.    Direct deposit: Yes;

q.    Checking accounts with Varo Bank & Bank of America; and,

r.    Credit inquiries by Simple Fast Loans, Inc. and Explore Credit/Insight, both on 07/25/2022.[1]

15.    Clarity's file on Ms. Ely is an example of a mixed file.

16.    A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

17.    Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants.

---

[1] Clarity incorporated full, unredacted information. Plaintiff has summarized this information so as to protect the privacy of the unrelated individual to whom it belongs.

18.     Likewise, Clarity incorporates data such as bank accounts and employment information into risk scores that it often provides to certain end-users, upon request.

19.     Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Ms. Ely's ability to obtain credit, and exposes her confidential information to third parties who never requested a report on her.

20.     Clarity knows through dozens, and likely more, prior lawsuits and disputes that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities.

21.     Despite such knowledge, Clarity has declined to correct its systems.

**Clarity Sells Ms. Ely's Report Without Permissible Purpose**

22.     Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

23.     Despite that obligation, Clarity sold consumer reports regarding Ms. Ely – on at least two separate occasions – in response to credit applications submitted under the name of "Gena Rogers."

24.     Both of these inquiries were received by Clarity on July 25, 2022. The first from "Simple Fast Loans, Inc," the second from ""Explore Credit/Insight."

25.     The credit applications submitted to "Simple Fast Loans, Inc" and "Explore Credit/Insight" were submitted in the name of "Gena Rogers," using

personal identifying information belonging to "Gena Rogers."

26.　These requests for a consumer report on Ms. Ely were submitted to Clarity using a different Social Security number, date of birth, and address from Ms. Ely's.

27.　There are no meaningful commonalities between Ms. Ely and "Gena Rogers" that could have justified Clarity's decision to treat a request for one as a request for the other.

28.　Clarity thus had no reason to believe it had a permissible purpose to furnish a report on Ms. Ely to these lenders, which had requested a report concerning an unrelated individual, not Ms. Ely.

29.　On the contrary, Ms. Ely's Clarity credit file disclosure confirms the sale of these reports through a common tracking number associated by Clarity with "Gena Rogers."

30.　Thus, even Clarity associated the inquiries with "Gena Rogers," not Ms. Ely.

31.　Clarity sold the reports concerning Ms. Ely's information regardless. In doing so, Clarity both disclosed Ms. Ely's confidential, legally protected information to entities that never requested it and incorporated that individual's information into Ms. Ely's file as though it were her own.

32.　Ms. Ely did not know, and in the exercise of reasonable diligence could not have known, that Clarity had sold these reports at the time of these sales.

33.     Ms. Ely discovered the sale of these reports when she obtained her consumer disclosure from Clarity on July 28, 2026.

**Clarity Illegally Redacts Consumer Disclosure**

34.     As mentioned, on July 28, 2026, Ms. Ely requested and obtained a copy of her consumer disclosure from Clarity.

35.     Ms. Ely's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

36.     Clarity's consumer disclosure to Ms. Ely dated July 28, 2026 reports the account number on her OneMain Financial tradeline as "XXXXXXXXXXXXX6066."

37.     Of the 17 characters Clarity displays, it has masked 13 – leaving the final four digits visible to Ms. Ely.

38.     The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

39.     The statute permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g). Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's file disclosure.

40.     Because Clarity has masked the account number, Ms. Ely cannot determine from the disclosure whether the account Clarity reports is in fact her

account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether.

41.    Clarity's decision to disclose the account only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

### Clarity Incorporates False Income Information into Ms. Ely's File

42.    Clarity also incorporated obviously-false income information into Ms. Ely's file.

43.     Specifically, Clarity incorporated data into Ms. Ely's file indicating that her monthly income was $2,000 as of July 25, 2022 at 10:31:43 am EDT, but $3,000 as of July 25, 2022 at 10:37:39 am EDT, less than six minutes later.

44.    A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, virtually assured to be false.

45.    No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

46.    Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting inconsistent and internally contradictory income figures for Ms. Ely, Clarity's file creates a false and misleading picture of Ms. Ely's financial situation, significantly increasing the

likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

47. Clarity's reporting of Ms. Ely's pay frequency is likewise internally inconsistent. Clarity's file lists two different pay frequencies for Ms. Ely – "BIWEEKLY" and "MONTHLY" – at the same time, in July 2022.

48. These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

49. Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

50. Clarity's file additionally lists a facially absurd pay-frequency for Ms. Ely: "NOTHING."

51. A pay frequency of "NOTHING" is facially absurd and impossible, particularly when Clarity reported a monthly income of $8,500 for Ms. Ely on the same date.

### Additional False Information in Ms. Ely's File

52. Clarity's phone data on Ms. Ely is further internally inconsistent: the numbers "727-XXX-2237", "864-XXX-6742" each appear simultaneously in multiple

of Ms. Ely's phone columns – reported as both her personal phone and her work phone – which Clarity's own definitions treat as distinct categories of information.[2]

53.    A prime example of Clarity's disregard for accuracy is its current reporting of two different dates of birth for Ms. Ely, each containing a different month, day, and year.

54.    A consumer can only have one date of birth; the additional date Clarity has on file is necessarily false and inaccurate.

55.    The harm to Ms. Ely from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

56.    A consumer file showing two different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Ms. Ely suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

---

[2] In the paragraphs that follow, the middle three digits of each telephone number quoted from Clarity's file have been redacted by counsel to protect Ms. Ely's privacy and are shown as "XXX." The original disclosure Clarity generated and produced to Ms. Ely contained the full telephone numbers; Clarity retains a copy of that unredacted disclosure in its own records.

57. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

58. Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

59. A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

60. Consequently, Clarity's inclusion of demonstrably false information about Ms. Ely's consumer identity, date of birth, net monthly income, pay frequency, and phone-number information had a significant negative impact on Ms. Ely's ability to obtain new credit with favorable terms.

61. Clarity has sold at least 36 consumer reports regarding Ms. Ely in the past two years.

62. Each of the reports sold by Clarity contained information belonging to an unrelated consumer, as well as the false information about Ms. Ely's identity, date of birth, net monthly income, pay frequency, and phone-number information.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

63.    As set forth above, on July 28, 2026, Ms. Ely requested a copy of her consumer credit disclosure from Clarity.

64.    Upon receipt of Ms. Ely's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

65.    The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

66.    Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

67.    For example, Clarity's disclosure shows an inquiry made on November 19, 2025 which Clarity identified to Ms. Ely only as "QB/TLS/MK Analytics/Propel."

68.    This single inquiry purports to identify four separate end users – "QB," "TLS," "MK Analytics," "Propel" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

69.     The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

70.     This pattern is not isolated. Clarity's disclosure contains additional inquiries reported in the same opaque, bundled format.

71.     For example, on May 8, 2026, Clarity disclosed an inquiry as "QuillBank/RISE/ElevatePrescreen."

72.     Even crediting that Ms. Ely might recognize "RISE" as a consumer lender, the disclosure still fails its statutory purpose: Ms. Ely cannot tell from this entry whether "RISE" actually obtained her consumer report or whether "QuillBank" and "ElevatePrescreen" did.

73.     "QuillBank" and "ElevatePrescreen" are obscure trade names that no reasonable consumer would recognize.

74.     The FCRA requires identification of *each* person who obtained a consumer report, *see* 15 U.S.C. § 1681g(a)(3)(A)(ii); partial identification of one bundled name is not compliance.

75.     Whether bundled with a recognizable name or composed entirely of opaque abbreviations, none of these disclosures provided Ms. Ely with the address, phone number, or other contact information that would allow her to identify which entity actually obtained her consumer report or to follow up with that entity directly.

76.     Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

77. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

78. Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Ely great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

79. Clarity's incomplete disclosure of who accessed Ms. Ely's credit report and why caused Ms. Ely significant frustration, stress, and concern.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

80. Clarity operates in stark contrast to its parent company, Experian.

81. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

82. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Ms. Ely is the

direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

83. The inaccuracies in Ms. Ely's file are not isolated transcription errors traceable to a single furnisher.

84. They span multiple categories of the data Clarity reports – including consumer identity, date of birth, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Ely's file and sold to creditors.

85. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

86. Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, opaque or bundled inquiry disclosures, contradictory residential and employment histories, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

87.     Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

88.     Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Ely.

89.     As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Ely's credit file. As such, Ms. Ely demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

90.     Ms. Ely has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

91.     Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

92.     Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Ely, as Clarity sold consumer reports containing information belonging to an unrelated consumer, and which was internally contradictory.

93.     Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

94.     Clarity's conduct was thus willful or done with a reckless disregard for Ms. Ely's rights under the FCRA.

95.     As a result of its conduct, Clarity is liable to Ms. Ely for the greater of Ms. Ely's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

   a.    the greater of Ms. Ely's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

   d.    such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

96.     Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

97.     Clarity owed Ms. Ely a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Ely.

98.     Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports containing information belonging to an unrelated consumer, and which was internally contradictory.

99.     Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Ely is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a.     actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.     such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

100.    Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

101.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Ely with a redacted version of her Consumer Disclosure, including by redacting the account

number on her OneMain Financial tradeline while disclosing that tradeline's balance, status, and payment history.

102. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

103. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

104. As a result of its conduct, Clarity is liable to Ms. Ely for the greater of Ms. Ely's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Ely's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**
**(Pled in the Alternative to Count III)**

105. Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

106. Clarity owed Ms. Ely a legal duty to accurately disclose all the information in her credit file upon her request.

107. Clarity breached this duty when it provided Ms. Ely with a redacted version of her Consumer Disclosure, including by redacting the account number on her OneMain Financial tradeline while disclosing that tradeline's balance, status, and payment history.

108. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Ely is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

109. Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

110. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Ely's consumer report during the one-year period preceding the date upon which she made the request.

111.    Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

112.    Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

113.    As a consequence, Clarity is liable to Ms. Ely for the greater of Ms. Ely's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Ms. Ely's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count V)

114.    Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

115.    Clarity owed Ms. Ely a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Ely's request.

116.    Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Ely's consumer report.

117.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Ely is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

   a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

   c.    such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

118.    Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

119.    Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two consumer reports regarding Ms. Ely to Simple Fast Loans, Inc and Explore Credit/Insight in response to credit applications submitted in the name of "Gena Rogers" – applications that concerned a different, unrelated individual and not Ms. Ely.

120. Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Ms. Ely.

121. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

122. Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Ely's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

### COUNT VIII
### NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count VII)

123. Ms. Ely adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

124. Clarity had a legal duty to Ms. Ely to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

125. Clarity breached this duty when it furnished two consumer reports

regarding Ms. Ely to Simple Fast Loans, Inc and Explore Credit/Insight in response to requests concerning a different, unrelated individual, and thus without a permissible purpose as to Ms. Ely.

126. Clarity's breach entitles Ms. Ely to her actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Ely respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on August 11, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*